UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN E. CUNNINGHAM,

                              Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

                              Defendant.

---

**REPORT AND
RECOMMENDATION**

06-CV-0167A(M)

        This case was referred to me by Hon. Richard J. Arcara to hear and report in

accordance with 28 U.S.C. §636(b)(1) (Dkt. #12).  Before me are parties' cross motions for

judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) (Dkt. ##6, 9).  For the following

reasons, I recommend that defendant's motion be denied, and that plaintiff's cross-motion be

granted in part.

## PROCEDURAL BACKGROUND

        Pursuant to 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the

Commissioner of Social Security denying his application for Disability Insurance Benefits

("DIB") (Dkt. #1).  Plaintiff filed an application for DIB on April 3, 2003 (T56-58).[1]  The claim

was initially denied (see T189).  On July 27, 2004 plaintiff filed a request for a hearing before an

Administrative Law Judge ("ALJ") (T28).  A hearing was held before ALJ James S. Quinlivan

---

        [1]     References to "T" are to the certified transcript of the administrative record filed by the
defendant in this action.

on November 29, 2004 (T244-79).  Plaintiff was represented at the hearing by Lawrence Lindsey, Esq. (T244).  On January 13, 2005, ALJ  Quinlivan issued a decision denying plaintiff's claim on the ground that there were a significant numbers of jobs in the national economy that plaintiff could have performed (T17-21).  The ALJ's determination became the final decision of the Commissioner on November 29, 2005, when the Appeals Council denied plaintiff's request for review (T4-7).

## THE ADMINISTRATIVE RECORD

### Summary of Relevant Medical Evidence

#### Physical Ailments

On September 5, 2002, Fuad Sheriff, M.D. completed a Family Medical Leave Act certification that plaintiff had been diagnosed with pneumonia on August 23, 2002, and that his estimated return date would be September 9, 2002 (T203-204).  Plaintiff underwent an initial sleep study on September 29, 2002, which revealed obstructive sleep apnea syndrome (T196; see also T180, 191) ).  On October 7, 2002 plaintiff was treated  for shortness of breath and chest discomfort (T194).   Dr. Sheriff suspected that this was due to a combination of panic attacks with reversible bronchospasm (Id.).  On October 22, 2002, plaintiff reported occasional shortness of breath, especially when exposed to fumes or when he exerted himself for a prolonged period of time (T189).  Dr. Sheriff recommended exercise (Id.).  A cardiolite stress test was performed on November 13, 2002, which found no evidence of myocardial ischemia (T186). On November 26, 2002, Dr. Sheriff found that plaintiff's panic attacks had stabilized, his shortness of breath was reoccurring, and that he continued to suffer from sleep apnea syndrome (T183).  On March

27, 2003, Dr. Sheriff indicated that plaintiff's shortness of breath "appear[ed] to be multifactorial with elements of Asthma, Allergy and psyche interplay" (T178).  Plaintiff was "advised to talk with his human resource manager whether any work could be provided to him in a clean office setting" (Id.). On May 7, 2003, plaintiff's asthma was stable with medication, but had "problem with high cpap pressure"[2], for which he would be starting pulmonary rehabilitation (T176).  In a letter dated November 23, 2004 to the Social Security Administration, Dr. Sheriff noted that plaintiff has "moderate carpal tunnel syndrome bilaterally" (T241).  Dr. Sheriff opined that because of plaintiff's "multiple disease states [including allergies, asthma, sleep apnea syndrome, atypical chest pain, depression and anxiety, plaintiff] cannot function well in normal surroundings both physically and mentally", and "therefore . . . is totally disabled from any work at this present time" (Id.).

On September 10, 2002, plaintiff was evaluated by Andras J. Vari, M.D., a pulmonologist.  A September 9, 2002 computerized tomography ("CT") scan of plaintiff's chest, revealed no significant abnormality (T201-202). Dr. Vari diagnosed plaintiff with a "lower respiratory tract infection with some asthmatic, irritative component" and "[p]ossibly underlying reactive airway disease, especially in response to inhaled noxious fumes" (T201).

Plaintiff was seen by Norman Fiorica, M.D., a pulmonologist, on November 19, 2002 (T171-72). Dr. Fiorica recommended a CPAP machine and a bronchoprovocation study (T172).  On December 27, 2002 plaintiff reported that the CPAP machine had improved his sleep and he felt more refreshed (T166).  Plaintiff's bronchoprovocation study was "essentially normal" (Id.). Dr. Fiorica diagnosed significant

---

[2]      "CPAP" means "continuous positive airway pressure".  (Dkt. #7, p. 6).

obstructive sleep apnea (T167).  On July 29, 2003, Dr. Fiorica noted that plaintiff "continues to experience significant chest tightness and dyspnea in response to multiple chemicals and fumes" (T164). Dr. Fiorica opined that because of "his sensitivities to numerous agents, . . . [plaintiff] will be unable to work in any capacity" (T164).  On September 3, 2003 a cardiopulmonary stress test was performed by Dr. Fiorica, which found no evidence of an underlying obstructive or restrictive lung disease or exercise induced airway hyperactivity and normal cardiac output (T161).  Additionally, he found that any reduction in exercise capacity was "largely related to deconditioning, possibly superimposed on obesity" (T161).  On October 17, 2003, Dr. Fiorica noted that plaintiff had been successful in losing weight (decreasing from 266 lbs. in December 2002 to 247 lbs.), but that this reduction had not dramatically improved his exercise ability (T159).  Dr. Fiorica opined that plaintiff "continues to be totally disabled due to a combination of his multiple medical and orthopedic problems" (Id.)

Plaintiff was evaluated by Steven V. Grabiec, M.D., an allergist, on March 13, 2003, and diagnosed with "bronchial asthma, significant allergic rhinitis, irritant rhinitis, and sleep apnea" (T119, 116).  Skin testing revealed that he was allergic to grass and ragweed pollen, dust mites, dogs, mold, and tree pollen (Id.).  Dr. Grabiec recommended that plaintiff avoid dust, mold and his pets (Id.).

On May 18, 2004, plaintiff was evaluated by Joseph A. Bax, M.D., who opined, based upon an EMG nerve conduction study, that plaintiff had bilateral carpal tunnel syndrome and recommended that he wear braces (T228).  On June 22, 2004, plaintiff advised that he had noticed some relief from the use of compression gloves (T229).

-4-

From October 31, 2004 through November 6, 2004, plaintiff was hospitalized with viral encephalitis (T230-231).

**Psychological Ailments**

On October 30, 2002, plaintiff was seen by Wilberforce Tamaklo, M.D., a psychiatrist (T212-13). Dr. Tamaklo diagnosed plaintiff with a panic disorder with agoraphobia and an adjustment disorder with depression and anxiety on Axis I (Id.). He also assessed plaintiff with a global assessment of functioning ("GAF") score of 55-60 on Axis V (Id.).[3] On December 5, 2002 plaintiff reported that he was more alert, less tired, and that his panic attacks and anxiety had reduced considerably since being on the CPAP machine (T211). On August 19, 2003, Dr. Tamaklo diagnosed plaintiff with major depression in addition to his panic disorder with agoraphobia (T210).

On April 22, 2003, Rhonn Gilchrist, a clinical social worker, completed a New York State Office of Temporary and Disability Assistance form indicating that he had treated plaintiff on a weekly basis commencing on February 2, 2003 (T120). Mr. Gilchrist's diagnosed plaintiff with panic attacks and anxiety (Id.), but noted that he had no limitation with understanding and memory, social interaction, or adaptation (T124-125). However, he did note

---

[3]     "The Global Assessment of Functioning ("GAF") is a rating for reporting the clinician's judgment of the patient's overall level of functioning and carrying out activities of daily living. The GAF score is measured on a scale of 10-100, with a higher number associated with higher functioning." Montalvo v . Barnhart, 457 F. Supp. 2d 150, 160 n. 5 (W.D.N.Y. 2006) (Elfvin, J.) (citing Wikipedia org). A GAF of 51-60 indicates "[m]oderate symptoms or any moderate difficulty in social, occupational, or school functioning" and a GAF of 71-80 indicates that "[i]f symptoms are present they are transient and expectable reactions to psyche social stresses; no more than slight impairment in social, occupational, or school functioning" Global Assessment of Functioning, available at Wikipedia.org.

that plaintiff exhibited "some" limitation with sustained concentration and persistence (T124).

Mr. Gilchrist opined that plaintiff was "not able to work due to anxiety" (T123).

### Consultative Examinations

#### Physical Examination

On June 2, 2003, Steven Dina, M.D., evaluated plaintiff and diagnosed him with

sleep apnea, asthma, anxiety and panic attacks, joint pain consistent with arthritis, and

hypertension (T138). Dr. Dina found no functional limitation from plaintiff's sleep apnea,

hypertension, or joint pain (Id.). Based on plaintiff's history, Dr. Dina found no functional

limitation from plaintiff's asthma, but noted that a pulmonary function test would be helpful to

obtain objective medical evidence of plaintiff's respiratory status (Id.).

#### Psychological Examination

On June 2, 2003, plaintiff was evaluated by Robert Hill, Ph.D., a psychologist,

and diagnosed with "[a]djustment disorder with anxious mood in partial remission" (T133).

Although plaintiff reported suffering from panic attacks and anxiety, Dr. Hill found that his

symptoms "did not appear to be so intense as to significantly interfere with vocational capacities"

and that his "anxiety did not appear to be as intense as he may have implied" (Id.). Plaintiff was

able to follow and understand simple directions and instructions, perform simple rote tasks,

maintain attention and concentration (Id.). He also appeared able to learn new tasks, relate

adequately with others, and manage some stress (Id.).

On June 27, 2003, Hillary Tzetzo, M.D., a non-examining state agency review

psychiatric consultant, completed a psychiatric review technique in which she concluded that

-6-

plaintiff had mild limitations in his activities of daily living and social functioning; a moderate

limitation in maintaining concentration; and no episodes of decompensation (T149). Based on

these findings, Dr. Tzetzo concluded that "if [plaintiff] complies with all treatment

recommendations . . . [he] should be able to understand and follow basic work directions in a low

contact work setting, maintain attention for such work tasks, relate adequately to a supportive

work supervisor for such work tasks, and use judgment to make basic work-related decisions in a

low contact work setting now" (T151). Dr. Tzetzo also completed a Mental Residual Functional

Capacity Assessment, in which she indicated, *inter alia*, that plaintiff had moderate limitations

with his ability to maintain his attention and concentration for extended periods, perform

activities within a schedule and maintain regular attendance, complete a normal workday and

work week without interruptions, interact appropriately with the general public, and respond

appropriately to changes in the work setting (T156).


### Administrative Hearing conducted on November 29, 2004

### Plaintiff's Testimony

Plaintiff, who was 51 years old at the time of the hearing, testified that he was a

high school graduate. He was last employed in August 2002 by Home Depot as a sales associate

for six and a half years (T247, 249). Plaintiff ceased working at Home Depot because of a bout

of pneumonia from which he "never seemed to get better" (252). Prior to his employment with

Home Depot, plaintiff owned his own business selling and installing window blinds for three

years and worked at a waste water treatment plant for 15 years (T249-251).

Plaintiff testified that his asthma prevents him from working (T252). Plaintiff takes Allegra, Singulair, Albuterol, and QVAR 80 for his allergies and asthma, which cause him to experience dizziness, headaches, and fatigue (T254). He also takes Celexa and Klonopin for his depression (T261), which also causes plaintiff to experience headaches, dizziness, dry mouth, and unsteadiness (T260, 267). For his sleep apnea, plaintiff takes Amitriptyline and Ambien (T266).

Plaintiff testified that he experienced panic attacks three to four times per week before his October 2004 hospitalization, and now experiences them on a daily basis (T268).

Plaintiff's wife prepares breakfast and dinner for plaintiff (T265-266). During the day, plaintiff attempts "to do some stuff around the house . . . go to friends and see them, talk with them, etc., take a nap" (T266). He also takes a hour nap 3 or 4 times per week (Id.).[4]

**Vocational Expert's Testimony**

Vocational expert Jay Steinbrenner testified that an individual between 49 and 51 years of age with plaintiff's education, work experience, and residual functional capacity would not be precluded from being an order clerk, mail clerk, customer service clerk, or dispatcher for which there are numerous jobs in the national economy (T273-274). Mr. Steinbrenner also testified that if an individual required four naps per week during the day and experienced daily headaches and panic attacks, it would have an impact on their ability to perform each of these occupations (T275-277). Likewise, if an individual was unable to deal with the general public

---

[4]    However, plaintiff's May 2, 2003 disability claim form indicates that he cooks breakfast/lunch 3-4 times per week and dinner 1-2 times per week (T88), vacuums once a week (id.), and goes food shopping with his wife or friends (T89).

and suffered from allergies, it would also impact their ability to perform certain of these occupations (T276-278).

### ALJ Quinlivan's Decision dated January 13, 2005

ALJ Quinlivan found that plaintiff suffered from the following severe impairments: obesity, bilateral carpal tunnel syndrome, bronchial asthma, environmental allergies, a panic disorder, and an adjustment disorder with mixed anxiety and depression (T22). However, he found that they did not meet one of impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Id.).

As to plaintiff's credibility, ALJ Quinlivan found:

"in determining the claimant's residual functional capacity, I have considered and made reduction based upon the claimant's demeanor or a witness. The undersigned was able to observe the claimant while he testified, his demeanor, the way he answered the questions and all of the factors that go into assessing a witness' credibility. Considering these factors, I find his credibility as a witness to be fair and his demeanor during the hearing consistent with the limitations established in his residual functional capacity. There is no evidence on record to indicate the claimant has ever reported headaches or dizziness as a side effect of his medication. There is no indication that he has ever reported difficulty with balance either. In addition, the record shows the claimant's depression and anxiety are stable and relatively well controlled with medication. Finally, the undersigned notes there is no evidence or record to indicate the claimant has sought treatment for complaints of shortness of breath or difficulty breathing since November 2003" (T25-26).

Concerning plaintiff's treating physicians' opinions, ALJ Quinlivan found that

they

> "have stated the claimant is not able to work because of
> environmental allergies and asthma, as well as other medical
> conditions. These generalized statements are not, however,
> supported by any objective medical findings. As the claimant's
> treating physician stated in March 2003, the claimant could work
> in a clean office setting. He does not experience any pulmonary
> symptoms when he avoids allergens, and Mr. Cunningham testified
> he is able to carry out his activities of daily living without difficulty
> despite have carpal tunnel syndrome. With regard to his sleep
> apnea, the medical record indicates this condition is resolved with
> use of the CPAP mask, to which the claimant did develop
> tolerances and has been able to use. As the treating physician's
> statements are not supported by objective medical findings, the
> undersigned has given the same little weight" (T26).
> ALJ Quinlivan found the claimant's treating psychologist stated on
> April 22, 2003 that the claimant had no social limitations, no
> adaption limitations, and "some" limitation with sustained
> concentration and persistence. The undersigned finds the
> assessment completed by the state agency psychological consultant
> consistent with the overall medical record and the treating
> psychologist's opinion" (T26).

With respect to Mr. Gilchrist's opinion, ALJ Quinlivan found:

> "The claimant's treating psychologist stated on April 22, 2003 that the
> claimant had no social limitations, no adaption limitations, and 'some'
> limitation with sustained concentration and persistence. The undersigned
> finds the assessment completed by the state agency psychological consultant
> consistent with the overall medical record and the treating psychologist's
> opinion" (T26).

Based on these findings, ALJ Quinlivan found that plaintiff had the following residual

functional capacity:

> "The claimant is able to perform light work; however, he can never
> climb hills, slopes, or high ladders; and can never work on uneven
> terrain or at unprotected heights, work in the vicinity of heavy
> moving machinery, operate mobile equipment, drive commercially,

write extensively, or operate computers or keyboards extensively;
he can never be exposed to excessive air pollutants, pulmonary
irritants, allergens, temperature extremes, dampness, or humidity;
he can only occasionally perform forceful pincher type gripping
maneuvers; he must be permitted to wear corrected eyeglasses,
protective hearing devices, or hearing aides; and he must be
provided with a clean air work environment without any significant
outside work. The claimant has moderate or fair ability to maintain
attention, concentration, persistence, or pace. He is best suited for
low stress, un-pressured, or fast-paced[5] type jobs" (T26).

Pursuant to these findings, ALJ Quinlivan found that plaintiff could not perform his past relevant

work (T27). However, based on the vocational expert's testimony, ALJ Quinlivan concluded

that plaintiff was capable of making a successful adjustment to another field of work and found

that he was not under a disability at any time through the date of the decision (T28).


## DISCUSSION AND ANALYSIS

**I.      Scope of Judicial Review**

The Social Security Act states that, upon review of the Commissioner's decision

by the district court, "[t]he findings of the Commissioner . . . as to any fact, if supported by

substantial evidence, shall be conclusive . . . ." 42 U.S.C. §405(g). Substantial evidence is that

which a "reasonable mind might accept as adequate to support a conclusion". Consolidated

Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938).

Under this standard, the scope of judicial review of the Commissioner's decision

is limited. This Court may not try the case *de novo*, nor substitute its findings for those of the

Commissioner. Townley v. Heckler, 748 F. 2d 109, 112 (2d Cir. 1984). Rather, the

---

[5]      In context, I assume that ALJ Quinlivan intended to say "slow-paced".

Commissioner's decision is only set aside when it is based on legal error or is not supported by substantial evidence in the record as a whole. Balsamo v. Chater, 142 F. 3d 75, 79 (2d Cir. 1998). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the Court's independent analysis of the evidence may differ" from that of the Commissioner.  Martin v. Shalala, 93-CV-898, 1995 WL 222059, at *5 (W.D.N.Y. March 20, 1995) (quoting Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, before deciding whether the Commissioner's determination is supported by substantial evidence, the court must first determine "whether the Commissioner applied the correct legal standard".  Tejada v. Apfel, 167 F. 3d 770, 773 (2d Cir. 1999). "Failure to apply the correct legal standards is grounds for reversal." Townley, supra, 748 F. 2d at 112.


## II.    The Disability Standard

The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A).  The impairments must be  "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §1382c(a)(3)(B).

-12-

The determination of disability entails a five-step sequential evaluation process:

1.    The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2.    If not, the Commissioner considers whether the claimant has a 'severe impairment' which limits his or her mental or physical ability to do basic work activities.

3.    If the claimant has a 'severe impairment,' the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations.  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4.    If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.    If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.  The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps."

Shaw v. Chater, 221 F. 3d 126, 132 (2d Cir. 2000) (citing DeChirico v. Callahan, 134 F. 3d

1177, 1179-80 (2d Cir. 1998)); see 20 C.F.R. §§404.1520, 416.920.


III.    **Analysis**

1.    **Duty to Recontact Plaintiff's Treating Physicians**

Plaintiff argues that this matter should be remanded because ALJ Quinlivan erred

in failing to contact plaintiff's treating physician Dr. Sheriff to clarify his statement to plaintiff

-13-

that he should contact his employer to determine if "any work could be provided in a clean office setting" (T178) (Dkt. #9, Point I).  Plaintiff further argues that ALJ Quinlivan was also obligated to recontact Dr. Sheriff and Dr. Fiorica, to ascertain the basis for their opinions that plaintiff was disabled (Id.).  In response, defendant argues that ALJ Quinlivan was not required to recontact plaintiff's treating physicians because there was sufficient evidence in the record to determine disability (Dkt. #10, Point I).

Generally, the Commissioner grants the opinion of a treating physician controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. §404.1527(d); Halloran v. Barnhart, 362 F.3d 28, 31-31 (2d Cir.2004) (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir.2002)).  However, "the Second Circuit has made clear, . . . that an ALJ cannot simply discount a treating physician's opinion based on a lack of clinical findings that accompany that opinion" Colegrove v. Commissioner of Social Security, 399 F. Supp. 2d 185, 189 (W.D.N.Y. 2005) (Larimer, J.) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Here, there are inconsistent assessments of plaintiff's ability to perform work-related activities.  The consultative examination performed by Dr. Hill, a psychologist, found that plaintiff's symptoms "did not appear to be so intense as to significantly interfere with vocational capacities" (T133).  Likewise, Dr. Tzetzo, a nonexamining state agency review psychiatric consultant, concluded that "if [plaintiff] complies, with all  treatment recommendations . . . [he] should be able to understand and follow basic work directions in a low contact work setting, maintain attention for such work tasks, relate adequately to a

-14-

supportive work supervisor for such work tasks, and use judgment to make basic work-related

decisions in a low contact work setting now" (T151).  A consultative examination for plaintiff's

physical ailments was  performed by Dr.  Dina, who found no functional limitation from

plaintiff's sleep apnea, hypertension, asthma, or joint pain (T138).

   Conversely, plaintiff's treating physician, Dr. Sheriff, opined that because of

plaintiff's "multiple disease states [including allergies, asthma, sleep apnea syndrome, atypical

chest pain, depression and anxiety, plaintiff] cannot function well in normal surroundings both

physically and mentally", and "therefore . . . is totally disabled from any work at this present

time" (T241).  Similarly, on October 17, 2003, Dr. Fiorica opined that plaintiff "continues to be

totally disabled due to a combination of his multiple medical and orthopedic problems" (T159;

see also T164 July 29, 2003 report ("with his sensitivities to numerous agents, I do not believe

that he will be able to work in any capacity")).

   In assessing these conflicting assessments, ALJ Quinlivan found that the

plaintiff's treating physicians' "generalized statements" that plaintiff was unable to work were

entitled to "little weight" because they were not supported by objective medical findings (Id.).

Additionally, ALJ Quinlivan noted the following:

> "As the claimant's treating physician stated in March 2003, the
> claimant could work in a clean office setting.  He does not
> experience any pulmonary symptoms when he avoids allergens,
> and Mr. Cunningham testified he is able to carry out his activities
> of daily living without difficulty despite have carpal tunnel
> syndrome.  With regard to his sleep apnea, the medical record
> indicates this condition is resolved with use of the CPAP mask, to
> which the claimant did develop tolerances and has been able to
> use." (T26).

While ALJ Quinlivan was not bound to accept plaintiff's treating physicians' conclusions as to whether he was disabled, before weighing their opinions, he had an obligation to contact them and develop the administrative record, including whether there was objective medical evidence in support of their opinions. See 20 C.F.R. §404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or *does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques*" (emphasis added)); SSR. 96-2p, 1996 WL 374188, at *4 (July 2, 1996)[6]; Schaal, supra, 134 F.3d at 505 ("even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*."); Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996) ("When there are gaps in the administrative record" or where "we are unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision", remand is appropriate (internal quotation marks omitted)); Cleveland v. Apfel, 99 F. Supp. 2d 374, 380 (S.D.N.Y. 2000) ("When the opinion submitted by a treating physician is not adequately supported by clinical findings, the ALJ must attempt, *sua sponte*, to develop the record further by contacting the treating physician to determine whether the required information is available" (citing 20 C.F.R. §404.1512(e)).

---

[6]     "[I]n some instances, additional development required by a case-for example, to obtain more evidence or to clarify reported clinical signs or laboratory findings-may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between a treating source's medical opinion and the other substantial evidence in the case record."

Additionally, in affording little weight to Dr. Sheriff's opinion that plaintiff was disabled, ALJ Quinlivan relied on the fact that it conflicted with his earlier statement that plaintiff could return to a clean work environment.  However, if he was troubled by any apparent inconsistency between Dr. Sheriff's records, he had a duty to seek out additional information from him.  See  Hartnett v Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) ("[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." (citing Clark v. Commissioner of Social Security, 143 F.3d 115, 118 (2d Cir.1998)).

Accordingly, I recommend that the decision be reversed and remanded to the Commissioner, with directions to reconsider plaintiff's application after contacting plaintiff's treating physicians.

**2.      Duty to Consider the Opinion of Plaintiff's Clinical Social Worker**

Plaintiff argues that ALJ Quinlivan erred in failing to consider the opinion of Rhonn Gilchrist, plaintiff's treating clinical social worker (Dkt. #9, Point II).  In response, defendant contends that ALJ Quinlivan did consider Mr. Gilchrist's opinion (Dkt. #10, Point II).

The record contains an April 22, 2003 New York State Office of Temporary and Disability Assistance form completed by Rhonn Gilchrist, indicating that he had treated plaintiff from February 2, 2003 on a weekly basis (T120).  Mr. Gilchrist diagnosed plaintiff with panic attacks and anxiety, but found that he had no limitation with understanding and memory, social

interaction, or adaptation, and "some" limitation with sustained concentration and persistence (T124-125).  However, he opined that plaintiff was "not able to work due to anxiety" (T123).

Contrary to plaintiff's contention, ALJ Quinlivan did address Mr. Gilchrist's opinion, albeit incorrectly referring to him as a "treating psychologist" (T26).  Specifically, he found that Mr. Gilchrist's assessment of plaintiff's limitations was consistent with Dr. Tzetzo's findings and the overall medical record (T155-157).

To the extent that plaintiff relies on the newly enacted Social Security Ruling No. 06-03p, 2006 WL 2329939 (S.S.A.), as amending how "other medical sources" are analyzed (Dkt. #9, p. 9), this reliance is misplaced, as this ruling was issued effective August 9, 2006, after the date of the final agency decision.  Consequently, I find that the Commissioner did not err in evaluating Mr. Gilchrist's opinion.


**3.      Duty to Credit Plaintiff's Work History**

Plaintiff argues that ALJ Quinlivan erred in failing to afford plaintiff's testimony additional credence in light of his excellent work history (Dkt. #9, Point III).  Defendant contends generally that ALJ Quinlivan properly evaluated plaintiff's credibility (Dkt. #7, Point 3).

The Second Circuit has observed that "ALJs are specifically instructed that credibility determinations should take account of 'prior work record,'" and that "a good work history may be deemed probative of credibility, poor work history may be probative as well". Schaal, supra, 134 F. 3d at 502 (citations omitted); see Rivera v. Schweiker, 717 F. 2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when

claiming an inability to work because of a disability."). "Work history, however, is but one of many factors to be utilized by the ALJ in determining credibility." Marine v. Barnhart, No. 00 CV 9392, 2003 WL 22434094, *4 (S.D.N.Y. October 24, 2003) (citing Schaal, supra, 134 F. 3d at 502).

        However, even assuming that plaintiff was entitled to an enhanced credibility finding as a result of his work history, there is substantial evidence to support ALJ Quinlivan's finding that plaintiff's credibility was "fair". See Howe-Andrews v. Astrue, No. CV-05-4539, 2007 WL 1839891, *10 (E.D.N.Y. June 27, 2007) ("Although plaintiff is entitled to 'substantial credibility' given her long work history, the Commissioner discounted plaintiff's testimony and affidavit to the extent that they were inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. This conclusion was based on substantial evidence." (internal citations omitted)).

        In discounting plaintiff's credibility, ALJ Quinlivan noted that plaintiff's claims of headaches, dizziness, and lack of balance were not reflected in his medical records (T25-26). He also found that the medical records reflected that plaintiff's anxiety and depression were stable and well controlled with medication, and that he had not sought treatment for shortness of breath or difficulty breathing since November 2003 (T25-26). Consequently, I find that the Commissioner did not err in considering, but ultimately discounting, plaintiff's complaints and allegations of limitations.

## CONCLUSION

For the foregoing reasons, I recommend that defendant's motion for judgment on the pleadings (Dkt. #6) be DENIED, and that plaintiff's cross-motion for judgment on the pleadings (Dkt. #9) be GRANTED to the extent that it seeks to vacate the Commissioner's determination and to remand the case to the Commissioner for further proceedings consistent with this Report and Recommendation. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of

Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

DATED:        August 31, 2007

JEREMIAH J. MCCARTHY
United States Magistrate Judge